JULIA MAGEE et al.

*v.*

CATHARINE BRADLEY et al.

1. Where a mortgage is twenty years overdue, and there is no proof that during that period, the mortgagor or assignee in possession has made any payment upon or otherwise recognized its existence, it is presumed to have been paid. This presumption is not rebutted by the fact that the owner of the mortgage and the owner of the equity of redemption, during this period, were brother and sister.

2. A presumption arises after twenty years from the accrual of the right to a legacy, that it has been paid, but the presumption may be rebutted by any credible evidence that it is still unpaid.

On bill for partition.

Magee v. Bradley.

This bill is filed to obtain a partition of a tract of land, and incidentally to have adjusted the respective liens claimed by certain of the owners in common.

The parties are the heirs of Forbes Holland, who died on the 14th day of January, 1894. There is no dispute in respect to the fact that the title to the tract was in Forbes Holland at the time of his death, nor in respect to the identity of the heirs of Forbes, nor in respect to their respective interests, apart from the liens which are claimed to exist.

The history of the evolutions of title to this land and the way by which the alleged liens arose, is as follows:

In 1862 these lands belonged to John Holland, the father of Forbes. There was then a mortgage upon them for the sum of $2,000, held by Eliza Boutillier. This mortgage had been executed in 1845. It was assigned by Eliza Boutillier, on the 15th of September, 1865, to Catharine Bradley, a daughter of John Holland, which assignment was recorded September 22d, 1865.

John Holland died on the 23d day of May, 1862, leaving a will by the terms of which he devised unto his wife, Nancy, absolutely, an undivided half interest in his real estate. He also devised to his wife, Nancy, a life interest in the other undivided half part of his lands, the remainder in such undivided one-half interest to go to his son Forbes Holland.

He charged upon the real estate given to Nancy a legacy of $500 bequeathed to his son Edward Holland. He charged upon the remainder in the one-half interest devised to Forbes the payment of $600, for the benefit of his son Thomas Holland. The said $600 were to be invested in land to be occupied by Thomas during his life, with power to Thomas to dispose of the same by will, and in default of such disposition, the same was to go to Thomas' heirs.

Nancy, his widow, occupied the land devised to her until 1863, when she died, leaving a will by the terms of which she devised to Forbes, her son, the undivided half of the property which she had held, absolutely. Nancy also imposed certain additional charges upon the undivided half which she devised

to Forbes. In the first place, she bequeathed to Daniel Coghlan, who was one of her executors with Forbes, the sum of $3,000, to be invested for Julia Magee, her daughter. She bequeathed to her daughter Diana Bradley $500, to her daughter Eliza Cavanagh $500, to her daughter Margaret Doyle the sum of $500. The last bequest was coupled with the condition that she should come into this state and personally demand the same within ten years from the decease of the testatrix. She gave to her grandson, John Donnelly, the sum of $300; she gave to her son Joseph Holland and to her daughter Catharine Bradley the sum of $5 each. All these pecuniary legacies were charged upon the real and personal estate given to Forbes, so that Forbes, after the death of Nancy, had the entire title to that land subject to charges upon it to pay legacies, which were liens as follows: Five hundred dollars first lien on an undivided half, $600 first lien on the other undivided half, then the legacies mentioned in Nancy's will, which were liens upon an undivided half, subject to the $500 legacy to Edward Holland. With Nancy, the widow, there had lived, it seems, her daughter Julia Magee. After the death of Nancy, Forbes told Julia to remain upon the property, and gave her the privilege of doing what she chose with the proceeds.

From 1865 down to the time of filing this bill, Julia Magee lived upon the premises in question, occasionally visited by the different relatives. From the time of the death of Nancy to the death of Forbes, affairs remained in this shape. Nothing appears to have been done in respect to the settlement of the estate, and there appears to have been practically nothing settled, as there was little or no personalty and no debts. Little appears to be in the testimony concerning any transactions in reference to the existing mortgage of $2,000, or in respect to the legacy of $3,000 to Julia Magee, or the other legacies charged upon the real estate.

*Mr. Willard W. Cutler*, for the complainants.

*Messrs. McCarter, Williamson & McCarter*, for the defendants.

Magee v. Bradley.

Reed, V. C.

In this posture of affairs, the question raised by the pleadings is whether the mortgage of $2,000 held by Catharine Bradley at the time of her death is a subsisting lien upon the tract, whether the legacy to Julia Magee is a subsisting lien, and if so, to what amount, and whether the other legacies charged upon the lands are subsisting liens, and if so, to what amount.

The rule is entirely settled that where a mortgagor has remained in possession without making any payments of principal or interest, or doing any other acts in recognition of the mortgage, for a period of twenty years, payment of said mortgage is presumed. *1 Jones Mort.* § *915.* The *onus probandi,* by reason of the lapse of this period of time, is thrown upon the mortgagee to prove that the instrument is still subsisting unpaid. The presumption does not act like a statutory limitation, but as a rule of evidence as well as a rule of public policy. The degree of proof required to overcome the presumption must necessarily vary with the circumstances which surround each individual case.

In *Executors of Wanmaker* v. *Van Buskirk, Sax. 693,* the circumstance that the mortgagor had married the daughter of the mortgagee and had issue; that the mortgagor had died many years before, leaving his wife and children in possession; that they were not in the situation to pay either principal or interest; that to have exacted payment might have brought distress upon them and upon those who depended on this property for support, and so would have been harsh, was deemed sufficient to rebut the presumption of payment.

In *Evans* v. *Huffman et al., 1 Halst. Ch. 354,* the chancellor cited with approval the remark of Sir William Grant in *Hillary* v. *Waller, 12 Ves. 252:* "The presumption does not rest on the belief that the payment has actually been made, but is raised because the means of creating belief or disbelief, after such a lapse of time, are so little to be relied on."

In this case the chancellor seems to have thought that neither the insolvency of the mortgagor nor his absence for a portion of the twenty years would rebut the presumption of payment.

In *Downes* v. *Sooy, Jr., 1 Stew. Eq. 55*, Chancellor Runyon, after again quoting the remarks of Sir William Grant, says: " The presumption of payment, in case of a mortgage on which nothing has been paid for twenty years, and there has been no foreclosure, and the mortgagee has had no possession of the mortgaged premises, arises from the policy of the law." In that case he reinforces the presumption of payment.

Now, what are the elements of fact in this case to rebut the presumption of payment arising from nearly or quite thirty years' delay to foreclose? There is no evidence of payment of any part of principal or of the interest to rebut the presumption. It is true that Ellen Hennesy says that, in 1868, Julia Magee came to her mother's and paid her $100 upon the mortgage. In respect to this testimony, Julia Magee says she never knew of the existence of the mortgage until after the death of Forbes. In addition to this evidence of Julia Magee, and the length of time that has elapsed since the event sworn to, there is the fact that there is nothing to show that Julia was authorized by Forbes to pay any sum upon principal or interest. Forbes, and not Julia, was the owner of the land upon which the mortgage was a lien. Besides the payment, if made, was made thirty years ago. It appears, further, that there is no endorsement of any sum of principal or interest upon the bond or mortgage. The only element of fact remaining to be considered is the kinship of the parties. It is in evidence that Catharine Bradley was well to do; therefore, it is argued that it can be inferred that she purchased and held this mortgage for the purpose of assisting Julia Magee, who, as has been already remarked, was permitted by Forbes to have the benefit of the equity of redemption. This seems to me a very slender foundation to overturn the presumption arising from this long period of time. For aught that appears, Forbes was as able to pay the mortgage as his sister was to forego payment. What occurred between them during this thirty years in relation to it, what arrangements were made in regard to its payment, what understanding was entered into in respect to its enforcement, surrender or payment, can now never be known, as the mouths of both Forbes and

Catharine are closed by death. For the very reason that, by this lapse of time, all means of proof have been extinguished, as a matter of public policy the presumption of payment should be permitted to remain. In my judgment the mortgage is not a lien.

The next question is whether the liens of the legacies, charged by the will of John Holland and of Nancy Holland upon portions of the estate, still exist. In respect to the matter of presumption of payment, these legacies stand upon much the same footing as the mortgage. I take it that the equitable rule is that a suit to recover a legacy will be barred by the same delay as is sufficient to prevent a recovery upon a mortgage.

It is true that there is no special statute of limitations applying to the recovery of legacies, and that the general statute does not reach such suits, because such statutes are not recognized in cases of express trusts, and executors or administrators are regarded as trustees of an express trust (*Hedges* v. *Norris, 5 Stew. Eq. 192*); yet, as in the case of mortgages, a court of equity will, in analogy to the statute of limitations, raise a presumption after the lapse of twenty years that a legacy has been paid. *Hayes* v. *Whitall, 2 Beas. 241.*

As to what circumstances will suffice to rebut this presumption, there seems to exist some contrariety of judicial sentiment.

In *Jones* v. *Turberville, 2 Ves. Jr. 11,* A., by will, charged all his estate, generally, with the payment of debts to legatees. A bill was filed by the second husband of a legatee after her death. Forty years had elapsed without demand. The plaintiff proved that another legacy of ten thousand guineas was not paid, and also offered to read the evidence of some bond creditors that debts due to them had not been paid. The bill also alleged the existence of certain infancies during the time. The court refused to entertain the suit.

In *Camppell* v. *Graham, 1 Russ. & M. 453,* the failure to bring a bill for a legacy for twenty-eight years, although the legatees had left Jamaica, where the assets were to be administered, previous to testator's death and never returned there, was held to bar the suit.

In *Pickering* v. *Stamford, 2 Ves. Jr. 272,* Lord Alvanly, master of the rolls, acknowledged the rule laid down in *Jones* v. *Turberville,* and said : " I should have held that where an executor, twenty years after the death of the testator, sells leasehold estate upon which legacies have been charged, and no demand has been made during all that time, there was evidence that the charge had been paid."

On the other hand, in *Ravenscroft* v. *Frisby, 1 Call 16,* one Morris died in 1789. He had left his property in a state of extreme embarrassment. It was improbable that the assets could ever be sufficient for the payment of the whole of his liabilities. Of all the property the mortgagees were in possession whose redemption must have preceded the application of the legacies to the purposes of the will.

It was held that, under these circumstances, a presumption of payment of the legacies did not arise from lapse of over twenty years.

In my judgment, there is evidence which rebuts the presumption of payment of some of these legacies.

Julia Magee swears positively that her legacy was never paid.

John Donnelly swears with equal positiveness that his legacy was not paid.

Thomas Holland is dead, but his wife swears that he never received the benefit of the $600 which was to be raised out of the property under the terms of his father's will.

She married Thomas in 1860, before the death of the father of Thomas, and she still survives. It is absolutely incredible that the provisions in the father's will could have been executed without her knowledge.

In respect to the legacies to Eliza Kavanagh and Diana Bradley, there is no evidence that they were paid or were not paid. To overcome the presumption of payment which thirty years' delay to make a claim for their payment raises, there is nothing but the conditions which existed during this period. But it seems impossible to say that those conditions were so repugnant to probability of their payment as to overcome the contrary presumption. Edward says he thinks his legacy was paid. It

is charged in the bill and undenied in any answer that Margaret Doyle's was paid.

Now, where it is proved that some were paid and some were left unpaid, it is difficult to see how any reliable inference can be drawn as to the payment of another legacy, concerning which there is absolutely nothing in the testimony except that the same condition of affairs existed in respect to these legatees as existed in regard to both the paid and unpaid legatees.

I am constrained to hold that the legacy to Eliza Kavanagh and the legacy to Diana Bradley are presumed to have been paid.

I will advise a decree that the property be sold; that the mortgage held by Catharine Bradley is paid; that the legacy given to Edward Holland is paid; that the legacy for $600 given to Thomas Holland, with interest, is a first lien upon the proceeds of the sale of the undivided one-half interest in said lands; that the legacy of $3,000 to Julia Magee, and the legacy of $300 to John Donnelly, are liens upon the other half interest in said lands.

As the value of the land seems to be insufficient to pay the legacies to Julia Magee and John Donnelly in full, they must be paid ratably.